UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY A. THEBERT,

     Plaintiff,

v.

POTESTIVO & ASSOCIATES, P.C., and
BRIAN A. POTESTIVO,

     Defendants.

Case No. 2:16-cv-14341
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [12]**

---

Defendant Potestivo & Associates, P.C. is a law firm that, among other things, collects debts. Potestivo sent Plaintiff Timothy Thebert a letter stating that it would be commencing foreclosure proceedings on his house. Because the letter did not break down the total amount owed, Thebert believes the letter violated the Fair Debt Collection Practices Act. After Thebert disputed the debt, Potestivo sent a verification letter. Because the verification letter also did not adequately break down the amount owed, Thebert believes that this letter also violated the FDCPA. Potestivo proceeded to foreclose and, as Michigan law requires, published a foreclosure notice in a county newspaper. But foreclosure is debt collection, and so Thebert believes that this too violated the FDCPA.

Thebert has thus filed this lawsuit alleging that Potestivo violated the FDCPA and Michigan's analog in numerous ways. Potestivo responds that none of Thebert's claims are plausible and asks this Court to dismiss Thebert's (amended) complaint. The Court agrees in part with Potestivo. But the Court finds that Potestivo has not shown that Thebert's claims that it

violated 15 U.S.C. § 1692c(b), § 1692e, § 1692f, and § 1692g(b) are implausible. Accordingly, the Court will grant in part and deny in part Potestivo's motion.

**I.**

**A.**

As Potestivo seeks to dismiss Thebert's complaint under Federal Rule of Civil Procedure 12(b)(6), the Court presents as fact the non-conclusory allegations of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The following also relies on documents attached to the complaint. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

In 2003, Thebert borrowed $125,000 from non-party Standard Federal Bank, N.A. (*See* R. 12, PID 558.) He secured the loan with a mortgage on his home. (*See* R. 12, PID 564.) At some point (the complaint does not say when), Fay Servicing began servicing the loan. (*See* R. 11, PID 491.)

On October 28, 2016, Thebert received a letter from Potestivo. The letter and two other documents are key to the claims in this case. So the Court reproduces them in some detail. The October 28, 2016 letter states:

> Dear Timothy A. Thebert
>
> THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR COLLECTING A DEBT. IF THE DEBT WAS DISCHARGED IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS NOT AN ATTEMPT TO COLLECT THAT DEBT.
>
> Please be advised that this office has been retained by Fay Servicing to commence proceedings to foreclose the mortgage securing the debt. *Under the terms of the mortgage, our client has elected to accelerate the total debt due and owing under the mortgage. As of the date of this letter, the total amount of the debt is: $115,267.00. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater*. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check. The

amount due must be tendered via certified funds. For further information, including an updated amount, please call 248-853-4400.

Wilmington Savings Fund Society, FSB . . . is the creditor to whom the debt is owed. Fay Servicing is the servicer of the debt on behalf of Wilmington Savings Fund Society, FSB . . . . The mortgage loan payments are made to the servicer.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume that the debt is valid. If you notify our office in writing within the 30-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to you. . . . Upon your written notice of dispute within said period, we must cease collection efforts until verification is mailed to you.

(R. 11, PID 491–92 (emphasis added).) The Court will refer to this October 28, 2016 letter from Potestivo to Thebert as the "Foreclosure Commencement Letter."

On November 28, 2016, Thebert sent an email to Potestivo disputing the debt. In the email, Thebert informed Potestivo that he had made monthly payments of $900 "for [the] entire 16 months" that Fay had been involved, that, since August 2015, he had disputed the amount owed but was never provided an accounting, and that he had made the same requests to the prior creditor or servicers. (R. 14, PID 727–28.) Thebert also claimed, "ZERO missed payments!!!" (R. 14, PID 728.) He concluded the email to Potestivo as follows: "Please get ACCURATE information from Fay. . . Good luck!!!" (R. 14, PID 728.) (Although Thebert's email is not attached to the amended complaint, the Court will consider it as both parties urge the Court to do so and because it is arguably central to Thebert's claims.)

In response to Thebert's email, Potestivo sent the second of three documents primarily at issue in this case. In particular, on December 9, 2016, Potestivo wrote the following letter to Thebert:

VERIFICATION OF DEBT

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A
DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR
COLLECTING A DEBT. IF THE DEBT WAS DISCHARGED IN A
BANKRUPTCY PROCEDDING [*sic*], THIS NOTICE IS NOT AN ATTEMPT
TO COLLECT THAT DEBT.

Dear Timothy A. Thebert:

Please find this letter as a response to your written dispute of the debt, dated
November 28, 2016. This communication serves as verification of the debt
pursuant to the Fair Debt Collection Practices Act §809(b). Following is
information obtained by us from the creditor in verification of the debt.

Loan Number: [redacted]
Borrower/Loan Obligor: Timothy A. Thebert, a Single Person
Origination Date: March 10, 2003
*Original Loan Amount: $125,000.00*
Original Lender: Standard Federal Bank N.A.
Mortgaged Property Address: [redacted] Spoon Ave., Madison Heights, MI 48071
Mortgagors: Timothy A. Thebert, a Single Person
Mortgagee: Standard Federal Bank, N.A.
Mortgagee Address: PO BOX 3703, Troy, MI 48007-9981
Assignee: Wilmington Savings Fund Society, FSB . . . .
Assignee Address: 500 Delaware Avenue, 11th Floor, Wilmington, Delaware
19801

Attached please find a copy of the Note evidencing this debt, Mortgage,
Assignment of Mortgage, Proof of Service and Payment History. Your
correspondence has also been provided to your mortgage servicer for further
review. If you have documentation showing that all payments have been made
please provide that information to our office. If you would like a reinstatement
letter please feel free to contact our office.

(R. 11, PID 505–06 (emphasis added); *see also* R. 12, PID 583–608.) The referenced "Payment

History" showed transactions associated with Thebert's loan from August 2015 through

November 2016. (*See* R. 11, PID 507–12.) The payment history also provided that the "Current

Principal Balance" is stated as "106,777.03." (R. 11, PID 507.) The Court will refer to

Potestivo's December 9, 2016 letter to Thebert as the "Debt Verification Letter."

On November 29, 2016—after Thebert sent his email but before Potestivo responded—Potestivo posted a foreclosure notice on the door frame of Thebert's house. (Under Michigan law, mortgages can be foreclosed by advertisement, which, as its name suggests, is a non-judicial foreclosure where the mortgagee advertises the sale of the mortgaged property.) The notice stated:

FORECLOSURE NOTICE

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR COLLECTING A DEBT. IF THE DEBT WAS DISCHARGED IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS NOT AN ATTEMPT TO COLLECT THAT DEBT. . . .

ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee for any reason. . . .

MORTGAGE SALE - Default has been made in the conditions of a certain mortgage made by:

Timothy A. Thebert, a Single Person
to
Standard Federal Bank, N.A., Mortgagee, dated March 10, 2003 . . . . Said mortgage was assigned to: Wilmington Savings Fund Society, FSB, . . . on which mortgage there is claimed to be due at the date hereof the sum of One Hundred Fifteen Thousand Two Hundred Sixty-Seven and No Cents ($115,267.00) including interest 2.75% per annum.

Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue, [*sic*] the Circuit Court of Oakland County at 10:00 A.M. on December 20, 2016[.]

Said premises are situated in City of Madison Heights, Oakland County, Michigan, and are described as:
      Lot 33, Spoon-Shacket Subdivision, according to the plat thereof as recorded in Liber 71, Page 20 of plats, Oakland County Records.
      Commonly known as 29378 Spoon Ave., Madison Heights, MI 48071

The redemption period shall be . . . .

(R. 11, PID 496–97.) Potestivo also published this same notice (formatted to the single-column of a newspaper) in the November 22, November 29, December 6, December 13, 2016 editions of the Oakland County Legal News. (R. 12, PID 613.) The Court will refer to the notice that Potestivo posted on Thebert's home and published in the newspaper as the "Foreclosure Notice."

Consistent with the Foreclosure Notice, a sheriff's sale was held on December 20, 2016. Wilmington Savings Fund Society, FSB, (the lender) bought the property. In January 2017, Thebert redeemed it.

## B.

In December 2016, Thebert filed this lawsuit. (*See* R. 1.) His amended complaint alleges that by sending him the Foreclosure Commencement Letter and the Debt Verification Letter, and by posting and publishing the Foreclosure Notice, Potestivo violated a plethora of provisions of the Fair Debt Collection Practices Act and the Michigan Regulation of Collection Practices Act. (*See* R. 11.) Thebert further asserts that Potestivo foreclosed other mortgages in a similar manner and thus seeks to make this suit a class action. (*See* R. 11.)

Potestivo not only disagrees with Thebert, it believes that Thebert's complaint does not even state a plausible cause of action. It thus asks this Court to dismiss Thebert's (amended) complaint under Federal Rule of Civil Procedure 12(b)(6). (R. 12.)

## II.

When, as here, a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to

draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

## III.

Before turning to Thebert's claims, the Court notes that it struggled to determine what they were. The complaint is 109 paragraphs; some have subparagraphs. The complaint cites case law and at times quotes from cases. Some allegations assert violations of the FDCPA in laundry-list fashion: "by publicizing to the State of Michigan a homeowner's private and protected information from a private letter in Exhibit 1 into a Mortgage Foreclosure Sale Notice in in [*sic*] Exhibit 2 in violation of 15 U.S.C. §§ 1692c(b) 15 U.S.C. 1692d (4) 15 U.S.C. 1692d 15 USC 1692e (6) 15 U.S.C. §§ 1692e (11)." (R. 11, PID 482.) And this is to say nothing of the claims under state law. In short, and despite the dictates of Federal Rule of Civil Procedure 8, the amended complaint forced the Court (and surely defense counsel too) to engage in considerable time and effort interpreting and disaggregating Thebert's claims. Thus, the following analysis is based on the claims of the amended complaint as this Court understands them to be.

## A.

Thebert alleges that in posting and publishing the Foreclosure Notice, Potestivo communicated with the public in connection with debt collection and thus violated 15 U.S.C. § 1692c(b). (R. 11, PID 482, 488.)

Section 1692c(b) provides, "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, *a debt collector may not communicate, in connection with the collection of any debt, with any person* other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b) (emphasis added).

Potestivo seeks dismissal of Thebert's § 1692c(b) claim solely on the grounds that posting or publishing the Foreclosure Notice "was not a communication made 'in connection with the collection of any debt.'" (R. 12, PID 535 (quoting 15 U.S.C. § 1692c(b).)

There is some merit in Potestivo's position. For one, not every letter a debt collector sends to the debtor is "in connection with the collection of any debt." Rather, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). So, as *Grden* held, if a consumer makes an inquiry about his account balance, and a debt collector simply responds to that inquiry without demanding payment or describing consequences of nonpayment, the communication is not one "in connection with" debt collection. Potestivo says that here, the Foreclosure Notice merely complied with the requirements of Michigan's foreclosure-by-advertisement statute and "did not demand payment, indicate the due date of any future payments, or state a default amount." (R. 12, PID 537.) Thus, says Potestivo, the Foreclosure Notice was not a communication "in connection with" debt collection.

On the facts of this case, *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013), is more instructive than *Grden*. In *Glazer*, the plaintiff claimed that a law firm violated the FDCPA in prosecuting a judicial foreclosure action. *See id.* at 457. The district court found that pursuing a foreclosure action was not debt collection. *See id.* at 459. The Sixth Circuit disagreed. It explained that "if a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *Id.* at 461. And that was just the purpose of foreclosure: "*every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Id.* (emphasis in original). Indeed, the court rejected the view of other courts that "payment of funds is not the object of the foreclosure action": "[t]here can be no serious doubt that the ultimate purpose of foreclosure is the payment of money." *Id.* at 464. Thus, the Sixth Circuit held that "mortgage foreclosure is debt collection under the [FDCPA]." *Id.* at 464

*Glazer* just about resolves the parties' dispute on this issue. True, *Glazer* merely held that foreclosure was debt collection. But all agree that posting and publishing the Foreclosure Notice was a necessary step in foreclosure. And the Foreclosure Notice was at least plausibly a "communication" because it conveyed information about the debt. *See* 15 U.S.C. § 1692a(2). So if the Foreclosure Notice was plausibly a "communication" (it was), and if it was necessary for foreclosure (it was), and if *Glazer* said that foreclosure is debt collection (it did), then it follows that by posting and publishing the Foreclosure Notice, Potestivo plausibly "communicate[d], in connection with the collection of any debt," 15 U.S.C. § 1692c(b). Indeed, several other district courts have relied on *Glazer* to find that a foreclosure notice pursuant to Michigan's foreclosure-

by-advertisement statute is plausibly a communication "in connection with" debt collection. *See Thompke v. Fabrizio & Brook, P.C.*, No. 17-10369, 2017 U.S. Dist. LEXIS 128359, at *25–29 (E.D. Mich. Aug. 14, 2017); *Salewske v. Trott & Trott P.C.*, No. 16-cv-13326, 2017 U.S. Dist. LEXIS 104681, at *1 (E.D. Mich. July 7, 2017); *Gray v. Trott & Trott, P.C.*, No. 16-00236 (W.D. Mich. Nov. 10, 2016) (order denying motion for judgment on the pleadings).

Potestivo makes a number of arguments for why a foreclosure notice is not a communication in connection with debt collection.

For one, Potestivo relies on "staff commentary" from the Federal Trade Commission. There the FTC staff interpreted the term "communication" under the FDCPA to exclude "a notice that is required by law as a prerequisite to enforcing a contractual obligation between creditor and debtor, by judicial or nonjudicial legal process." Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02, at *50101 (Dec. 13, 1988). Potestivo says that the Foreclosure Notice falls within the exclusion.

This may be true. But the FTC's staff commentary is "not binding on the Commission or the public." *Id.* Further, the plain language of the FDCPA does not include the exception. It defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). So it is not at all clear where the exception even comes from. *See Salewske*, 2017 U.S. Dist. LEXIS 105207, *14 ("[T]he [FTC staff] guidance appears to craft an exception to the definition of 'communication' out of whole cloth[.]"), *report and recommendation adopted in relevant part by*, 2017 U.S. Dist. LEXIS 104681; *Gray*, No. 16-00237, slip op. at 6 (W.D. Mich. Jan. 19, 2017) (denying motion for reconsideration and explaining that FTC staff commentary was "directly refuted" by *Glazer*); *cf. Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) ("[W]e find nothing either in the [FDCPA] or

elsewhere indicating that Congress intended to authorize the FTC to create this exception from the Act's coverage."). As such, the FTC staff's interpretation of "communication" does not make it implausible that the Foreclosure Notice is a communication under the FDCPA.

Potestivo also warns, "If this Court were to accept Plaintiff's allegations that the Foreclosure Notice is a communication made in connection with collection of a debt, then every foreclosure-by-advertisement would be considered a violation of the FDCPA because of the posting and publishing requirement." (R. 15, PID 753.) Not so. The FDCPA provides that "*a debt collector* may not communicate, in connection with the collection of any debt, with any person . . . ." 15 U.S.C. § 1692c(b) (emphasis added). As long as the company foreclosing is not a "debt collector," *see* 15 U.S.C. § 1692a(6), then § 1692c(b) would not prevent that company from publishing a foreclosure notice.

Potestivo also points to the purpose of the FDCPA—to prevent abusive debt-collection practices. (R. 15, PID 755.) Publishing a Foreclosure Notice, says Potestivo, is not such a practice. But the specific purpose of § 1692c(b), at least according to the senate report introducing the FDCPA, is different: "In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in 15 States: it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." S. Rep. No. 95-382, at 4 (1977), *reprinted at* 1977 U.S.C.C.A.N. 1695, 1699; *cf.* FTC Staff Opinion Letter to Borowski (Nov. 6, 1992), *available at* http://www.cardreport.com/laws/fdcpa/ftc-opinion/borowski.html ("The restriction imposed by [§ 1692c(b)] on communicating with third parties is intended to

prevent unscrupulous debt collectors from embarrassing consumers and invading their privacy by revealing the existence of their debt to friends, neighbors or other third parties who do not already know of the debt."). Potestivo has not argued that this Court's interpretation of § 1692c(b) is inconsistent with the purpose of that particular provision of the FDCPA.

Potestivo also argues that in signing the mortgage, Thebert consented to foreclosure by advertisement. It follows, says Potestivo, that Thebert consented to the necessary steps to foreclose by advertisement, including the posting and publishing of the Foreclosure Notice.

Potestivo, however, raised this argument for the first time in its reply brief, depriving Thebert of a chance to say anything about it. Courts generally do not address such arguments. *See Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51–52 (D.D.C. 2015) (collecting cases and explaining that "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief"). And this general rule applies with some force here because Thebert might have a response. The statute does not speak of just any consent, but consent "given directly to the debt collector." 15 U.S.C. § 1692c(b). And even if Thebert had directly given Potestivo consent to foreclose by advertisement, the Foreclosure Notice arguably includes some information not required by Michigan's foreclosure-by-advertisement statute, *see* Mich. Comp. Laws § 600.3212, so it is not clear that Thebert consented to the communication of that information. Given at least these two issues, the Court prefers to address Potestivo's consent argument on full briefing.

In short, Potestivo has not shown that it is implausible that it violated 15 U.S.C. § 1692c(b) by posting and publishing the Foreclosure Notice.

**B.**

Although his amended complaint is not entirely clear on this point, by citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), Thebert apparently asserts that Potestivo violated § 1692e, § 1692e(2)(A), and § 1692f by failing to provide an itemized breakdown of the debt or by providing him with different amounts of the debt. (*See* R. 11, PID 470–71, 480 n.1, 487.)

Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A). For its part, § 1692f prohibits "unfair" debt collection: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

In applying these sections, the Court looks at the debt collector's conduct or representations through the eyes of the least sophisticated consumer. *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (6th Cir. 2014). This is because the FDCPA "protects all consumers, the gullible as well as the shrewd." *Stratton*, 770 F.3d at 450 (internal quotation marks omitted). But unsophisticated does not mean unreasonable, so a debt collector is not liable for a consumer's "bizarre or idiosyncratic interpretations" of debt-collection notices. *See id.* (internal quotation marks omitted).

**1.**

The Court begins with Potestivo's description of the amount of the debt in the Foreclosure Commencement Letter.

Taking that letter in isolation, Thebert has not adequately pled that Potestivo made false, deceptive, or misleading representations under § 1692e or attempted to collect the debt in an unfair manner under § 1692f. The letter stated that "the total amount of the debt is: $115,267.00." To the extent that the least sophisticated consumer could be unsure about what the "total" included, the letter offered this clarification: "Under the terms of the mortgage, our client has elected to accelerate the *total debt due and owing under the mortgage*." (R. 11, PID 491 (emphasis added).) The letter also explained that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater" thereby shedding some additional light on what made up the total. Thus, standing alone, there was nothing false, misleading, or unfair about Potestivo's statement.

The Court does not take Thebert's principal case on this issue, *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), to be to the contrary. There, Jodi Fields incurred about $120 in charges at an animal hospital. *Id.* at 563. Under an agreement to pay the bill later, Fields would pay interest and, if necessary, attorney's fees associated with collecting on the bill. *See id.* at 563–64. Eight months later, Fields received a dunning letter, asking her to pay not $120 but nearly $400. The Seventh Circuit thought Fields had stated a claim upon which relief could be granted under § 1692e and § 1692f. The Court explained that even if an unsophisticated consumer had kept the agreement, she might nonetheless wonder why her $120 bill was now "triple[] in size." *Id.* at 566. Or, if the unsophisticated consumer had "lost the bill and forgotten the amount of the debt completely," she "might logically assume that she simply incurred nearly $400 in charges." *Id.* The Court continued, "By leaving the door open for this assumption to be made, [the debt collector's] letter was misleading because it gave a false impression of the character of the debt. It is unfair to consumers under the FDCPA to hide the true character of the

debt, thereby impairing their ability to knowledgeably assess the validity of the debt. One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Id.*

Here, the Foreclosure Commencement Letter did not, as *Fields* suggests would be proper, "itemize the various charges that comprise the total amount of the debt." *Id.* But the Court does not read *Fields* to hold that whenever a debt collector fails to do so in its initial communication with the debtor, the collector violates § 1692e and § 1692f. The question is whether, by failing to itemize the total, the debt collector falsely, deceptively, or misleadingly conveyed the amount of the debt or unfairly sought to collect on the debt. *See* 15 U.S.C. §§ 1692e 1692f; *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *8 (W.D. Tex. June 24, 2016) ("While the FDCPA does not affirmatively require itemization in every instance, whether a failure to itemize is misleading or deceptive is a context-specific inquiry."). With common mortgages, the consumer pays the debt on a monthly basis or, at least, receives monthly loan statements. So it is not likely that, as in *Fields*, the least sophisticated consumer would have "lost the bill and forgotten the amount of the debt completely," 383 F.3d at 566. Further, as noted, the Foreclosure Commencement Letter implied that the total included "interest, late charges, and other charges," and thus, unlike *Fields*, gave the consumer some insight into what made up the total. Further still, there is no allegation that the total Potestivo claimed was due was substantially larger than the principal—certainly not "triple[] in size" as in *Fields*.

Thus, the Court finds that it is not plausible that the manner in which the Foreclosure Commencement Letter conveyed the amount of the debt violated § 1692e or § 1692f—when that letter is taken in isolation.

But, in Thebert's particular case, there is some context surrounding the letter. He sent an email to Potestivo claiming that he had paid $900 a month for the prior 16 months, that he had missed "ZERO" payments, and had, for over a year, made "repeated" requests for an accounting but never received one. (*See* R. 14, PID 727–28.)

Given this context, it is plausible that merely providing the "total debt due and owing under the mortgage" would mislead or be unfair to the least sophisticated consumer. The least sophisticated consumer in Thebert's position, i.e., one believing he is current on his loan and unaware of the loan's status, might assume that the $115,267 figure does not include substantial late charges or other fees associated with default. True, the Foreclosure Commencement Letter informs the reader that foreclosure is imminent and so a consumer could infer that substantial fees have accumulated. But it is *plausible* that the *least sophisticated* consumer would not draw that inference. Thus, the Foreclosure Commencement Letter, by failing to break down the debt, plausibly gives the least sophisticated consumer in Thebert's position a misleading impression about the debt's character (i.e., that the $115,267 figure is only principal and standard interest). *See* 15 U.S.C. § 1692e. And "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." *See Fields*, 383 F.3d at 566; 15 U.S.C. § 1692f. As such, in view of Thebert's email, it is plausible that the manner in which the Foreclosure Commencement Letter conveyed the total amount of the debt violated § 1692e and § 1692f.

**2.**

Thebert also appears to allege that Potestivo violated § 1692e and § 1692f in sending the Debt Verification Letter. (*See* R. 11, PID 470–71, 472, 480 n.1, 481.) In particular, Thebert complains that because Potestivo included two amounts in the Debt Verification Letter, neither

of which was the $115,267 figure previously referenced in the Foreclosure Commencement Letter, the least sophisticated consumer would be confused as to what is owed. (*See* R. 11, PID 470–71, 472, 480 n.1, 481.)

The Court finds it plausible that the Debt Verification Letter would deceive or mislead the least sophisticated consumer as to the amount of the debt. *See* 15 U.S.C. § 1692e. In its initial communication (i.e., the Foreclosure Commencement Letter), Potestivo told Thebert that the total amount of the debt was $115,267. Thebert asked for verification of that figure. The consumer would thus expect that the Debt Verification Letter would confirm the $115,267 figure. But the Debt Verification Letter does not even mention the $115,267 figure. And it appears that the payment history, which is difficult for the average consumer to decipher, does not show how the $115,267 figure came to be. Adding to the confusion, the Debt Verification Letter references a $125,000 figure and a $106,777.03 figure. True, the $125,000 figure was labeled as the "Original Loan Amount" (R. 11, PID 505) and the $106,777.03 figure was labeled as the "Current Principal Balance" (R. 11, PID 507) and so Potestivo did not make any literally false statement. But the proper lens here is the eyes of the least sophisticated consumer who requested verification of a $115,267 debt. *See McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) ("What seems pellucid to a judge, a legally sophisticated reader, may be opaque to the unsophisticated consumer." (internal quotation marks and alterations omitted)). By not mentioning the $115,267 debt (let alone providing insight into how it came to be), it is plausible that the least sophisticated consumer would be deceived or misled as to the amount owed. *See* 15 U.S.C. § 1692e.

It is also plausible that Potestivo used an unfair means to collect a $115,267 debt. *See* 15 U.S.C. § 1692f; *Fields*, 383 F.3d at 566. As stated, the Debt Verification Letter failed to confirm

the $115,267 figure referenced in the initial communication and provided little insight into how that number came to be. The least sophisticated consumer would thus have little ability to point out a flaw in the $115,267 figure.

In arguing to the contrary, Potestivo cites case law pertaining to the debt-verification requirements of § 1692g(b). (*See* R. 12, PID 550–51.) But the issue here is whether Potestivo violated § 1692e and § 1692f, not § 1692g(b). And even if Potestivo's § 1692g(b) case law extends to the § 1692e and § 1692f domain, the two cases that Potestivo cites are of questionable viability after the Sixth Circuit's decision in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014). In *Mabry v. Ameriquest Mortgage Company*, the court stated, "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." No. 09-12154, 2010 WL 1052353, at *1 (E.D. Mich. Feb. 24, 2010), *report and recommendation adopted*, No. 09-CV-12154, 2010 WL 1052355 (E.D. Mich. Mar. 19, 2010). And Potestivo's second case relied on *Mabry. See Thomas v. Trott & Trott PC*, No. 10-13775, 2011 WL 576666, at *7 (E.D. Mich. Feb. 9, 2011). But in *Haddad*, the Sixth Circuit reviewed cases from other courts and stated,

> *These cases suggest that the "baseline" for verification is to enable the consumer to "sufficiently dispute the payment obligation."* Although the answer to that question depends on the facts of a particular situation, *the cases reflect that an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective.* Intuitively, such a practice makes good sense. In fact, it would likely lead to faster resolutions of disputes with those consumers who act in good faith, because it will either show a valid debt that a consumer acting in good faith will actually pay, uncover an error in the record of the debt leading to the cancellation of the debt, or reveal the underlying dispute between the parties that can then be resolved. Finally, such an approach is consonant with the congressional purpose of the verification provision.

*Haddad*, 758 F.3d at 785 (emphasis added). Accordingly, the Court is not persuaded that verification always involves "nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed," *Mabry*, 2010 WL 1052353, at *1.

* * *

In short, by reciting the $125,000 loan amount and $106,777.03 principal amount, but not mentioning the prior-referenced debt amount of $115,267, let alone showing how that amount came to be, it is plausible that the Debt Verification Letter would mislead or deceive the least sophisticated consumer about the amount of the debt. *See* 15 U.S.C. § 1692e. Further, in attempting to collect $115,267 without providing in the Debt Verification Letter adequate information about how that amount came to be, Potestivo plausibly used a debt collection practice that was unfair to the least sophisticated consumer. *See* 15 U.S.C. § 1692f.[1]

## C.

Thebert asserts that, in publishing the Foreclosure Notice, Potestivo violated 15 U.S.C. § 1692g(b) by continuing with debt collection after he disputed the debt. (R. 11, PID 488.)

Section 1692g(b) provides, "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof,

---

[1] In addition to asserting a violation of § 1692f, Thebert's amended complaint references, in conclusory fashion, § 1692f(1). (R. 11, PID 461, 483.) That subsection of the FDCPA prohibits a debt collector from "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The amended complaint does not identify any interest, fee, or charge that Potestivo attempted to collect but was not permitted to under the mortgage or loan. Accordingly, Thebert's § 1692f(1) claim is not adequately pled. *See Twombly*, 550 U.S. at 555 (providing that, under Rule 8, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."

It appears that Thebert has pled a violation of § 1692g(b). Thebert sent an email to someone at Potestivo disputing the debt on November 28, 2016. (R. 14, PID 727–28.) Potestivo did not mail Thebert the Debt Verification Letter until (at earliest) December, 9, 2016. (*See* R. 11, PID 507.) Yet between November 28 and December 9, 2016, Potestivo twice published the Notice of Foreclosure in the Oakland County Legal News. (*See* R. 12, PID 613.) As the purpose of publishing the Foreclosure Notice was to effectuate foreclosure, *see* Mich. Comp. Laws § 600.3208, and "foreclosure is debt collection," *Glazer*, 704 F.3d 459, the publishing of the Foreclosure Notice was arguably "collection of the debt" under § 1692g(b). Yet, under § 1692g(b), Potestivo was to "cease" collection of the debt until it mailed a verification to Thebert.

Potestivo has not addressed this claim in its motion to dismiss. As such, the Court will not dismiss Thebert's claim that Potestivo violated § 1692g(b) by publishing the Notice of Foreclosure between the time he disputed the debt and Potestivo mailed the Debt Verification Letter.[2]

---

[2] Thebert, relying on *Haddad*, also asserts that Potestivo violated § 1692g(b) by not itemizing the amount of the debt in the Debt Verification Letter. (R. 14, PID 704–06.) The problem for Thebert is that he first asserted this § 1692g(b) claim in his response to Potestivo's motion to dismiss—not in his amended complaint. *Richter v. Seterus, Inc.*, No. 15-CV-12874, 2016 WL 8200520, at *2 (E.D. Mich. May 16, 2016) ("A response to a motion to dismiss is the improper forum for asserting a new claim."). To be sure, Thebert cites § 1692g(b) several times in his amended complaint. (R. 11, PID 473, 488.) But each time he cites that provision, it is for the proposition that Potestivo had to cease debt-collection activities once he disputed the debt. (*See id.*) Accordingly, the Court does not consider whether Potestivo violated § 1692g(b) by not itemizing the amount of the debt in the Debt Verification Letter.

**D.**

Thebert asserts that Potestivo violated § 1692e(3) and § 1692e(10) by sending the Foreclosure Commencement Letter and posting and publishing the Foreclosure Notice without adequate attorney involvement. Section 1629e(3) prohibits a debt collector from "false[ly] represent[ing] or imply[ying] that . . . any communication is from an attorney." Thebert infers that there was no meaningful attorney involvement in the drafting and sending of the Foreclosure Commencement Letter because the letter was "computer generated [and] mass produced" and because the letter failed to "br[eak] down and clarif[y] the amount owed on the debt" (a mistake an attorney would not make). (R. 11, PID 471, 480.) Thebert infers that there was no meaningful attorney involvement in the drafting, posting, and publishing of the Foreclosure Notice because, if there had been, there would have been no violations of "the Michigan Foreclosure Statute, the FDCPA [or] the [Michigan Regulation of Collection Practices Act]" and there "would have been a proper verification of the debt under the FDCPA prior to going forward with collection activities." (R. 11, PID 480; R. 14, PID 707.) And, Thebert says, because there was inadequate attorney involvement, but Potestivo implied that there was, Potestivo also violated § 1692e(10)'s prohibition on using any "false representation or deceptive means to collect or attempt to collect any debt."

Thebert has "not nudged [these] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The inference that lawyers are not involved with form letters or do not make mistakes is a weak one. Thebert essentially speculates about Potestivo's inner workings without any factual allegations about the law firm's debt-collection process. Accordingly, the Court will dismiss Thebert's claims under § 1629e(3) and § 1629e(10).

## E.

Thebert asserts that, by not including the amount to "reinstate" and not "specify[ing] the extra fees and costs" in the Foreclosure Commencement Letter, Potestivo violated 15 U.S.C. § 1692g(a)(1).

Section 1692g(a)(1) provides that in the "initial communication" with the debtor, or within five days of that initial communication, the debt collector must provide, in writing, "the amount of the debt." *See* 15 U.S.C. § 1692g(a)(1).

It appears that Potestivo did just that. The Foreclosure Commencement Letter, by stating, "Please be advised that this office has been retained by Fay Servicing to commence proceedings to foreclose the mortgage securing the debt" (R. 11, PID 491), indicates that it is Potestivo's "initial communication" (and Thebert does not plead otherwise). And in that letter, Potestivo explicitly stated, "As of the date of this letter, the total amount of the debt is: $115,267.00." (R. 11, PID 491.) As such, Potestivo provided Thebert with "the amount of the debt." *See* 15 U.S.C. § 1692g(a)(1).

Thebert complains that the Foreclosure Commencement Letter did not provide the amount he should pay to "reinstate" and did not "specify the extra fees and costs." (R. 11, PID 473.) But, as to the former, the Foreclosure Commencement Letter (consistent with the mortgage) stated that Fay had "elected to accelerate the total debt due and owing under the mortgage." (R. 11, PID 491; *see also* R. 12, PID 569.) Thus, "the amount of the debt" under § 1692g(a)(1) would not have merely been the amount to reinstate—it was the entire amount under the mortgage (the whole principal, all the interest, and all the fees). As for the Foreclosure Commencement Letter's failure to "specify the extra fees and costs," Thebert cites no case indicating that § 1692g(a)(1)—which governs the debt collector's *initial* statement of the debt—

requires that the debtor be provided with an itemized breakdown of debt. *Cf. Haddad*, 758 F.3d at 785 (providing that in responding to a debt *verification* request under § 1692g(b), an itemized breakdown may be the best means for enabling the consumer to dispute the payment obligation).

Thebert does cite *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), but that case does not help him establish a violation of § 1692g(a)(1). In *Miller*, the letter in question provided the debtor with the "unpaid *principal* balance"; this did not include, among other things, unpaid interest and late charges. *Id.* at 875. The Seventh Circuit thus explained, "The unpaid principal balance is not the debt; it is only a part of the debt; [§ 1692g(a)(1)] requires statement of the debt." *Id.* Here, unlike in *Miller*, the Foreclosure Commencement Letter did not simply provide the unpaid principal but rather explicitly stated that the "*total* amount of the *debt* is: $115,267.00." (R. 11, PID 491 (emphases added).)

In short, Thebert has not adequately pled a violation of § 1692g(a)(1).

## F.

Thebert also claims that by posting and publishing the Foreclosure Notice, Potestivo "publiciz[ed]" his "private mortgage debt information" in violation of 15 U.S.C. § 1692d and § 1692d(4). (R. 11, PID 488.) In particular, Thebert believes that the Foreclosure Notice should not have stated "[d]efault has been made in the conditions of a certain mortgage made by: Timothy A. Thebert to Standard Federal Bank" and should not have indicated that he was being "pursued by an [a]ttorney debt collector." (R. 14, PID 701.)

Section 1692d provides, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Violations of § 1692d include "[t]he publication of a list of consumers who allegedly

refuse to pay debts, except to a consumer reporting agency," 15 U.S.C. § 1692d(3), and "[t]he advertisement for sale of any debt to coerce payment of the debt," 15 U.S.C. § 1692d(4). "The examples of oppressive conduct listed in § 1692d concern tactics intended to embarrass, upset, or frighten a debtor." *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (internal quotation marks omitted)).

## 1.

The Court begins with § 1692d's specific prohibitions.

Although Thebert alleges a violation of § 1692d, and a violation of § 1692d(3) is a violation of § 1692d, Thebert does not plead or argue that the Foreclosure Notice violates § 1692d(3). Accordingly, the Court does not address the possibility that by publishing a notice of foreclosure in a newspaper, Potestivo "publi[shed] . . . a list of consumers who allegedly refuse to pay debts."

As for § 1692d(4), the Foreclosure Notice does not fit that prohibition's plain language. The Foreclosure Notice advertises the sale of real property: "notice is hereby given that said mortgage will be foreclosed by a *sale of the mortgaged premises*, or some part of them, at public vendue, [*sic*] the Circuit Court of Oakland County at 10:00 A.M. on December 20, 2016[.] *Said premises* . . . are described as[] Lot 33, Spoon-Shacket Subdivision . . . . Commonly known as 29378 Spoon Ave., Madison Heights, MI 48071." (R. 11, PID 496–97 (emphases added).) And while the property secured the repayment of the debt, the property was not itself the debt. *See* 15 U.S.C. § 1692a(5) (defining "debt" to mean "any obligation or alleged *obligation of a consumer to pay money* arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"). So the Foreclosure Notice, which advertised the sale of the property and not the sale

of the mortgage or loan, was not, in § 1692d's words, an "advertisement for sale of any debt." *See Windham v. JPMorgan Chase Bank, N.A.*, No. CV 15-12809-FDS, 2016 WL 1642582, at \*2 (D. Mass. Apr. 25, 2016) (finding that a notice of foreclosure sale "was not an advertisement for sale of a debt, but an advertisement concerning foreclosure of the property securing the debt").

**2.**

That leaves § 1692d's general prohibition on "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

The Court does not find it plausible that by posting a foreclosure notice on a home and publishing the notice in a small-circulation newspaper, Potestivo engaged in conduct "the natural consequence of which" was to harass, oppress, or abuse the least sophisticated consumer. Thebert has not pled that the Foreclosure Notice was widely viewed or likely to be seen by acquaintances. And in posting the Foreclosure Notice, Potestivo was merely complying with Michigan law. *See* Mich. Comp. Laws §§ 600.3208, 600.3212.

Regarding this last point, *Wood v. Midland Funding*, LLC, — F. App'x —, No. 16-2206, 2017 WL 2703795 (6th Cir. June 22, 2017), is instructive. There, the debt collector had filed suit to collect on debts but had difficulty serving the debtors. *Id.* at \*1. The court permitted alternative service and the debt collector published notices in a newspaper for three consecutive weeks. *Id.* at \*1–2. As an example, the newspaper notices stated, "To: Suzette Wood IT IS ORDERED: You are being sued in this court by the plaintiff for monies due to Chase Card Member Services for the amount over $3,012.06." *Id.* at \*2. The debtors claimed that the newspaper notices violated § 1692d. The Sixth Circuit found that the debtors had not even pled a claim for relief: "Although Plaintiffs suggest that less information could have been used (or that some courts have ordered publication of less facts), they fail to cite caselaw in support of the

notion that publication of unexpurgated debt information in accordance with a court order is a per se violation of the FDCPA." *Id.* at *5.

Here, the Foreclosure Notice was not in accordance with a court order. But again, it was in accordance with a Michigan statute. And while the foreclosure-by-advertisement statute might not have required Potestivo to include everything it included in the Foreclosure Notice, it did require Potestivo to include the mortgagor's name, the "amount claimed to be due on the mortgage," and a "description of the mortgaged premises." Mich. Comp. Laws § 600.3212. From this statutorily-required information, the public could well infer that Thebert had defaulted on his loan and owed over $115,000. As such, the situation here is similar to the one in *Wood.* And there, the Sixth Circuit found that the debtors had not pled a violation of § 1692d.

* * *

In short, the Court finds that Thebert has not adequately pled that posting and publishing a Foreclosure Notice resulted in "harass[ment], oppress[ion], or abuse" prohibited by § 1692d or that the Foreclosure Notice advertised the sale of a debt as prohibited by § 1692d(4). Thebert's claims under § 1692d and § 1692d(4) will thus be dismissed.

## G.

Thebert asserts that in posting and publishing the Foreclosure Notice, Potestivo violated 15 U.S.C. § 1692e(6). (R. 11, PID 482, 488.)

Section 1692e(6) prohibits a debt collector from "false[ly] represent[ing] or impl[ying] that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—(A) lose any claim or defense to payment of the debt; or (B) become subject to any practice prohibited by this subchapter."

It is unclear from the amended complaint why Thebert believes Potestivo violated § 1692e(6). He pleads that by publishing the Foreclosure Notice, Potestivo publicized "private and protected information" from the Foreclosure Commencement Letter and thus violated § 1692e(6). (R. 11, PID 482.) But § 1692e(6) does not prohibit publicizing private mortgage information. He also confusingly pleads, "Defendant violated 15 USC 1692e (6) with the false representation or implication that the [Foreclosure Notice] allows the debt collector to violate the FDCPA." (R. 11, PID 488.)

In his response to Potestivo's motion to dismiss, Thebert clarifies his § 1692e(6) claim. He says, "[t]here is only one case that Plaintiff is aware of that supports Plaintiffs allegation under 15 U.S.C. § 1692e(6)." (R. 14, PID 702.) Thebert refers to *Hartman v. Asset Acceptance Corp.*, 467 F. Supp. 2d 769 (S.D. Ohio 2004). There, the court interpreted § 1692e(6)(A) as "prohibit[ing] the representation, or threat, that if the debtor 'fails to pay up,' the debt will be sold to someone else, adversely affecting the debtor's rights." 467 F. Supp. 2d at 779.

Even accepting *Hartman*'s interpretation of §1692e(6)(A), the Foreclosure Notice did not threaten that the debt would be sold to someone else—it at most threatened that the security backing the promise to repay the debt would be sold to someone else. Moreover, § 1692e(6) only prohibits "false representation[s] or implication[s]," and Thebert has not shown that there was anything false about the Foreclosure Notice's statement that his property would be sold. (It in fact was sold on the advertised date.)

In short, Thebert's amended complaint does not show that it is plausible that Potestivo violated § 1692e(6) in posting or publishing the Foreclosure Notice.

## H.

Thebert also asserts that Potestivo violated a host of provisions under the Michigan Regulation of Collection Practices Act. In his amended complaint, he indicates that these state-law claims need not be addressed separately from those under the FDCPA. (R. 11, PID 465.) In its motion, Potestivo similarly indicates that Thebert's FDCPA claims and MRCPA claims do not warrant separate analysis. (*See* R. 12, PID 545, 552–53.) Accordingly, to the extent that the Court has found that Potestivo has not shown that Thebert's FDCPA claim should be dismissed, Potestivo has not shown that Thebert's analogous MRCPA claim should be dismissed.

## IV.

For the reasons given, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The Court understands the remaining claims in the case to be as follows:

(1)     In posting and publishing the Foreclosure Notice, Potestivo communicated with persons other than those listed in 15 U.S.C. § 1692c(b) and thus violated that provision of the FDCPA and the analogous provision, if any, of the MRCPA;

(2)     By sending the Foreclosure Commencement Letter without itemizing the total amount of the debt, or otherwise providing adequate insight into how that total is comprised, Potestivo violated 15 U.S.C. § 1692e and § 1692f and the analogous provision, if any, of the MRCPA;

(3)     By sending the Debt Verification Letter without mentioning the $115,267 debt (let alone providing insight into how it came to be), and instead mentioning two other amounts in the same numerical range, Potestivo

violated 15 U.S.C. § 1692e and the analogous provision, if any, of the MRCPA;

(4)     By attempting to collect $115,267, without providing adequate insight into how that amount is comprised in the Debt Verification Letter, Potestivo violated 15 U.S.C. § 1692f and the analogous provision, if any, of the MRCPA;

(5)     By publishing the Foreclosure Notice in the county newspaper after Thebert disputed the debt but before Potestivo mailed the Debt Verification Letter, Potestivo violated 15 U.S.C. § 1692g(b) and the analogous provision, if any, of the MRCPA.

All other claims in this case are DISMISSED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: August 18, 2017                          U.S. DISTRICT JUDGE


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 18, 2017.

s/Keisha Jackson
Case Manager